JDM 2015R00211

Kob
11/29/15

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 DEC 29  PM 5: 13

CLERK'S OFFICE
AT BALTIMORE

_____DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.** _____ RDB-15-662 |
| | * | |
| **SHAHEEN TASEWAR HUSSAIN,** | * | **(Food Stamp Fraud, 7 U.S.C. § 2024(b);** |
| | * | **Wire Fraud, 18 U.S.C. § 1343;** |
| **Defendant.** | * | **Forfeiture)** |
| | * | |

*******

## INDICTMENT

## COUNTS 1-3

### (Food Stamp Fraud, 7 U.S.C. § 2024(b))

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Indictment:

1.    Defendant **SHAHEEN TASEWAR HUSSAIN** was a resident of Ellicott City, Maryland.

2.    Shop & Save was a convenience store operated by defendant **SHAHEEN TASEWAR HUSSAIN** and located at 301 Crain Highway South, Suite D, Glen Burnie, Maryland.   Defendant **SHAHEEN TASEWAR HUSSAIN,** through the Shop & Save convenience store, participated in the Food Stamp or Supplemental Nutrition Assistance Program.

### The Food Stamp Program / Supplemental Nutrition Assistance Program

3.    Congress passed the Food Stamp Act of 1977 in an effort to alleviate hunger and malnutrition.  The program uses tax dollars to subsidize low-income households, permitting them to obtain a more nutritious diet by increasing the food purchasing power of eligible households.

1

JDM 2015R00211

4.      The Food Stamp program's name changed to the Supplemental Nutrition Assistance Program (SNAP). It was jointly administered by the United States Department of Agriculture (USDA) and the Food and Nutrition Service (FNS) together with various state agencies.

5.      Title 7 of the Code of Federal Regulations, Section 278.2(a), prohibits an authorized retail food store from accepting food stamp coupons in exchange for cash. Further, Title 7 of the Code of Federal Regulations, Sections 278.2(a) and (h) provide that food stamp coupons may "only be accepted from eligible households or the households' authorized representative, and only in exchange for eligible food." Title 7 of the Code of Federal Regulations, Section 271.2 states that food stamp "coupons" include "an electronic benefit transfer card or personal identification number issued pursuant to the provisions of the Food and Nutrition Act of 2008, as amended, for the purchase of eligible food."

6.      In Maryland, the SNAP program was administered by the Maryland Department of Human Resources (DHR) and was known as the Food Supplement Program (FSP). In 1993, Maryland changed the issuance method of SNAP benefits from a traditional paper coupon system to an Electronic Benefits Transfer (EBT) system. DHR awarded Xerox (formerly ACS) the current network management contract for its FSP EBT system. FSP customers were issued plastic EBT Cards which contain an embedded magnetic stripe that stores basic information required for food purchases. Retailers approved by FNS to accept SNAP benefits were assigned an FNS authorization number. Prior to September 2014, in some cases retailers were provided with a point of sale (POS) device to access the electronic funds allocated to customers' EBT Cards. Some large retailers used their own POS devices. All retailers approved by FNS after September 2014, were required to arrange and pay for their own EBT equipment, supplies, and

2

related services from a third party processor. POS devices are used to communicate with the Maryland EBT central database to debit a customer's available SNAP benefit balance for the cash value of eligible food items purchased.

7.     Under the food stamp program, benefits were automatically added to a recipient's EBT Card on a monthly basis. When an EBT Card was swiped or manually entered through a retailer's POS terminal, the store employee or customer (depending on the type of POS device) would actively select SNAP/food stamp purchase as the transaction type from the POS terminal menu. The employee would then enter the total dollar amount of the transaction to be conducted. The transaction request was completed when the cardholder entered their unique personal identification number (PIN). This caused an electronic transmission of information through a series of network switches to the central Maryland EBT database located in Texas, which maintained customer account balance information. The EBT Contractor verified the retailer was authorized to conduct SNAP EBT transactions. The Maryland EBT system verified the amount of benefits available, authorized the transaction and deducted the purchase amount from the customer's available balance. The system also calculated cumulative FSP sales for each retailer and authorized electronic payments to the retailer's bank account.

8.     Once the transaction was approved, information flowed back to the POS terminal and the store employee received confirmation that the cardholder's account had been successfully debited. FSP EBT transactions were made for the exact amount of the sale and no change was given to the cardholder. SNAP reimbursements were paid to authorized retailers through a series of electronic funds transfers. On a daily basis, Xerox, located in Austin, Texas, reconciled accounts for participating MD SNAP retailers.

3

9.      In order to participate in the SNAP as an authorized retailer, a business submitted FNS Form 252, Food Stamp Program Application for Stores.  As part of that application, the owner/manager certified that s/he understood and agreed that it was a "violation" of SNAP regulations to "trad[e] cash for Supplemental Nutrition Assistance Program benefits (i.e. trafficking)."  Further, as part of the application, the owner/manager of that business would acknowledge receiving mandatory SNAP retailer training that is sent to the retailer upon authorization.  This training from FNS was designed to educate and train store owners/managers on the proper procedures for acceptance and redemption of SNAP benefits.   Store owners/managers were responsible for training their employees in the proper procedures for the SNAP program.  Retailers could possibly lose their authorization to redeem SNAP benefits if they broke program rules or no longer qualified for participation in the program.

10.      In order to receive SNAP reimbursements, authorized retailers arranged for a POS terminal with a third party processor.  The authorized retailer designated a bank account with the third party processor to which EBT benefits from legitimate food stamp transactions were deposited.  In some cases, the third party processor was Xerox, the current network management contractor for the FSP EBT system.  In other instances, authorized retailers made arrangements with third party processors that had the ability to process EBT transactions.

**The Defendant and Food Stamp Transactions Conducted at Shop & Save**

11.      In 2007, **SHAHEEN TASEWAR HUSSAIN** submitted FNS Form 252 to FNS in order to license C-Store, located at 301 Crain Highway South, Suite D, Glen Burnie, Maryland to participate in the food stamp program as a SNAP retailer.  As part of the application to participate in the SNAP program, **SHAHEEN TASEWAR HUSSAIN** certified that she

4

understood that it was a "violation" of SNAP regulations to "trad[e] cash for food stamp benefits."

12.     On April 14, 2011, **SHAHEEN TASEWAR HUSSAIN**'s C-Store was permanently disqualified from SNAP for violating FNS SNAP regulations by exchanging SNAP benefits for cash.

13.     In July 2011, Articles of Incorporation were filed with the State of Maryland to create Safe #7, Inc. Defendant **SHAHEEN TASEWAR HUSSAIN** was listed as the director of Safe #7 Inc. Individual #1 was listed as the resident agent of Safe #7, Inc. The address given for Safe #7, Inc. was 301 Crain Highway South, Suite D, Glen Burnie, Maryland, which is the location of Shop & Save.

14.     In September 2011, Individual #1 submitted FNS Form 252 in order to license Shop & Save with FNS to participate in the food stamp program as a SNAP retailer. In that application, Individual #1 was listed as the owner of Shop & Save. That application contained the same certification statements as the application previously submitted by **SHAHEEN TASEWAR HUSSAIN** for C-Store. Specifically, as part of the application for Shop & Save to participate in the SNAP program, Individual #1 certified that he/she understood that it was a "violation" of SNAP regulations to "trad[e] cash for Supplemental Nutrition Assistance Program benefits."

15.     In November 2011, Individual #1 made arrangements with Xerox for a POS terminal and submitted a Maryland Retailer Settlement Authorization Form. In that form, Individual #1 designated a bank account in the name of Safe #7 Inc. as the account to which EBT benefits would be deposited. This account was controlled by defendant **SHAHEEN TASEWAR HUSSAIN**.

16.     As a licensed SNAP retailer participant, Individual #1 received instruction from FNS regarding the requirements and regulations of the food stamp program, including instruction that only eligible food items could be exchanged for EBT benefits and that a retailer may never exchange EBT benefits for cash or other non-food items.  Additionally, Individual #1 received instruction that he/she was required to ensure all owners and employees of Shop & Save, including **SHAHEEN TASEWAR HUSSAIN**, reviewed the training materials on FNS requirements and regulations.  Furthermore, given her prior participation in, and disqualification from, SNAP in 2011 when she was the license holder for C-Store, **SHAHEEN TASEWAR HUSSAIN** was aware a SNAP retailer may never exchange EBT benefits for cash or other non-food items.

17.     From in or about July 2014 through in or about October 2015, **SHAHEEN TASEWAR HUSSAIN**, while she was operating Shop & Save, and other employees of Shop & Save, known and unknown to the Grand Jury, routinely redeemed EBT benefits in exchange for cash at less than face value of the EBT benefits in violation of the food stamp program rules and regulations.  As a result of these unlawful cash transactions, **SHAHEEN TASEWAR HUSSAIN** obtained approximately more than $778,183 in EBT deposits for food sales that never actually occurred.  **SHAHEEN TASEWAR HUSSAIN** knew that exchanging cash for EBT benefits was in violation of the laws, rules and regulations regarding the food stamp program and that she was not entitled to the EBT deposits made by FNS into the bank account for Safe # 7, Inc., which she controlled.

## THE CHARGES

18.     On or about the dates enumerated below, in the District of Maryland, the defendant,

6

JDM 2015R00211

## SHAHEEN TASEWAR HUSSAIN

did knowingly use, transfer, acquire and possess food stamp coupons, through an EBT Card, having a value in excess of $100 in a manner contrary to the Food Stamp Act (Title 7, United States Code Section 2011, et seq.) and the Regulations issued pursuant to that program, that is, defendant **SHAHEEN TASEWAR HUSSAIN** redeemed beneficiaries' electronic benefits for cash at less than full value, as follows.

| COUNT | DATE | TOTAL EBT USED | TOTAL CASH PAID |
|-------|------|----------------|-----------------|
| 1 | 4/14/2015 | $ 100.62 | $ 60.00 |
| 2 | 7/9/2015 | $ 100.50 | $ 60.00 |
| 3 | 9/11/2015 | $ 100.53 | $ 60.00 |

7 U.S.C. § 2024(b)(1)
18 U.S.C. § 2

JDM 2015R00211

## COUNTS 4-9

### (Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury for the District of Maryland further charges that:

19.     The allegations set forth in paragraphs 1 through 17 of Counts One through Three of the Indictment are hereby realleged and incorporated by reference here.

### The Scheme to Defraud

20.     On or about the dates enumerated below, in the District of Maryland, the defendant,

### SHAHEEN TASEWAR HUSSAIN,

knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises ("the scheme to defraud") from SNAP, a federally funded national malnutrition program jointly administered by USDA and FNS, together with various state agencies.

### Object of the Scheme to Defraud

21.     It was the object of the scheme to defraud that defendant **SHAHEEN TASEWAR HUSSAIN** would debit funds from beneficiaries' EBT Cards and pay the individual beneficiary who had presented the EBT Card in cash, at less than full value. Typically, **SHAHEEN TASEWAR HUSSAIN** paid the individual who had presented the EBT Card approximately 60% of the value of the amount she had debited in cash. To avoid detection, defendant **SHAHEEN TASEWAR HUSSAIN** would also debit the funds off the card in multiple transactions. By executing this scheme to defraud, defendant **SHAHEEN TASEWAR**

8

HUSSAIN obtained at least approximately $778,183 from the USDA/FNS SNAP Program to which she was not lawfully entitled.

## Manner and Means

22.    It was part of the scheme to defraud that the defendant **SHAHEEN TASEWAR HUSSAIN** would and did, on multiple occasions, cause a USDA EBT point of sale device in Maryland to electronically transmit interstate a request to authorize a transaction and deduct the amount from the EBT Card's available balance for unauthorized and unlawful redemption.

23.    It was further part of the scheme to defraud that the defendant **SHAHEEN TASEWAR HUSSAIN** would and did, on multiple occasions, cause the Maryland EBT System (through the EBT Contractor) to electronically transmit interstate a signal that authorized electronic payments to the bank account of Safe #7, Inc., an account which **SHAHEEN TASEWAR HUSSAIN** controlled.  Once the transaction was approved, information flowed back to the POS terminal and the store employee received confirmation that the cardholder's account had been successfully debited.

24.    It was further part of the scheme to defraud that the defendant **SHAHEEN TASEWAR HUSSAIN** would and did, on multiple occasions, obtain cash in exchange for redeeming SNAP benefits for cash.

## The Charge

25.    On or about the dates enumerated below, in the District of Maryland, the defendant,

### SHAHEEN TASEWAR HUSSAIN,

for the purpose of executing and attempting to execute the scheme to defraud, did transmit and cause to be transmitted by means of wire, radio, or television communication in interstate or

JDM 2015R00211

foreign commerce, any writings, signs, pictures or sounds for the purpose of executing such scheme, that is, defendant **SHAHEEN TASEWAR HUSSAIN** knowingly caused a USDA EBT point of sale device installed inside Shop & Save to electronically transmit a request to authorize a transaction and deduct the amount from an EBT Card's available balance for unauthorized and unlawful redemptions to the central Maryland EBT database located in Texas to redeem beneficiaries' electronic benefits for cash at less than full value, as follows:

| COUNT | DATE | TIME | EBT TRANSACTION AMOUNT | TOTAL EBT USED | TOTAL CASH PAID |
|---|---|---|---|---|---|
| 4 | 4/14/2015 | 15:10:44 | $ 75.02 | $ 100.62 | $ 60.00 |
| 5 | 4/14/2015 | 15:11:33 | $ 25.60 | | |
| 6 | 7/9/2015 | 14:31:16 | $ 75.50 | $ 100.50 | $ 60.00 |
| 7 | 7/9/2015 | 14:31:50 | $ 25.00 | | |
| 8 | 9/11/2015 | 13:47:12 | $ 85.20 | $ 100.53 | $ 60.00 |
| 9 | 9/11/2015 | 13:47:57 | $ 15.33 | | |

18 U.S.C. § 1343
18 U.S.C. § 2

JDM 2015R00211

## FORFEITURE

1.     The allegations of Counts One through Nine of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture.

2.     Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the Defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. Section 981(a)(1)(C) and 28 U.S.C. Section 2461(c), upon conviction of an offense in violation of 7 U.S.C. §2024(b) and/or 18 U.S.C. § 1343, each defendant shall forfeit to the United States of America all property, real and personal, which constitutes and is derived from proceeds traceable to the scheme to defraud.

3.     The property to be forfeited includes, but is not limited to, the following:

      a.     A sum of money equal to the value of the proceeds of the scheme to defraud, which amount is at least $778,183; and

      b.     The merchandise fraudulently obtained during the course of the scheme detailed above.

4.     If any of the property described above, as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

JDM 2015R00211

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).

7 U.S.C. §§ 2024(e), (f)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 1343
28 U.S.C. § 2461(c)
Rule 32.2(a), Fed. R. Crim. P.

_Rod J Rosenstein by JDM_
ROD J. ROSENSTEIN
UNITED STATES ATTORNEY

A TRUE BILL:

12/29/2015
Date

**SIGNATURE REDACTED ED**

Foreperson

12